*353 OPINION OF THE COURT
Herman J. Walz, J.
This is a prosecution for driving while ability impaired by alcohol. It was stipulated that defendant’s blood alcohol content was .09%. Vehicle and Traffic Law § 1195 (2) (c) directs that evidence of blood alcohol content between .07 and .10% "shall be given prima facie effect in determining whether the ability of such person to operate a motor vehicle was impaired by the consumption of alcohol.” Since there was very little evidence offered by either party as to defendant’s condition or the manner in which he operated his vehicle, this case presents a question of the meaning of the statutory direction to give prima facie effect to the blood alcohol test result. Before the adoption of Vehicle and Traffic Law § 1192 (2) the presence of more than .15% of alcohol in the blood was used as prima facie proof of intoxication. The adoption of that statute accompanied an elimination of that presumption as applied to driving while intoxicated (Vehicle and Traffic Law § 1192 [3]), and allowed presumptions to apply for levels below .10% (Vehicle and Traffic Law § 1195). Since that time there has been a dearth of cases relating to how the presumption applies to drinking driver prosecutions.
The arrest and charge in this case came when police were investigating an automobile accident in which defendant was involved. Defendant had been operating his motorcycle with his wife as a passenger seated behind him. Just seconds prior to the accident, the arresting officer observed the defendant pass by him in the opposite direction. He noted nothing out of the ordinary. The accident occurred when another vehicle struck the motorcycle from behind. The officer was on the scene almost immediately. He observed the defendant on his feet and his wife lying on the pavement near the over-turned motorcycle. Defendant was emotionally upset; he was yelling and crying and showed great concern for his wife. The officer noted a strong odor of an alcoholic beverage emanating from defendant, and noted that defendant’s eyes were bloodshot, his speech was slurred, and that he was unsteady on his feet. Defendant complained to the officer of pain in his legs, and an aggravation of a previous leg injury. Defendant admitted to drinking "a couple of beers”. After the wife’s medical needs were attended to, defendant was taken to police headquarters where he submitted to a breathalyzer test. The officer agreed that defendant was cooperative, polite and clearheaded at that time.
*354 Defendant argues that the People’s case should fail because they offered no evidence as to the operation of the vehicle in other than a legal and normal fashion. He also argues that there was no evidence offered that his ability to drive was actually impaired by alcohol. The People rely in part on the fact that the blood alcohol content is prima facie evidence of impairment.
The statute (Vehicle and Traffic Law § 1192 [1]) does not require that impairment from alcohol be proved by showing improper or unlawful operation of the vehicle. The trier of fact may find actual impairment from the behavior of the defendant and the symptoms presented after the operation of the vehicle has ceased. Here, however, the behavior of the defendant is equally consistent with sobriety as it is with intoxication or impairment of ability by alcohol. The unsteady gait, the yelling and crying, are understandable in view of the accident which had just occurred, and the apparent physical condition of defendant’s wife. The fact that an accident occurred is of no help to the People, since defendant’s vehicle was struck from behind by another vehicle. The odor of alcohol simply is evidence that the defendant had consumed an alcoholic beverage, a fact which he readily admitted. The symptom of bloodshot eyes is certainly ambiguous. It is clear that the only reason this defendant was charged was the result of the breathalyzer test.
Although the statute uses the term "prima facie effect”, the evidence of blood alcohol content is usually spoken of as a presumption. While presumptions can be quite useful in civil cases, their use is sharply limited in criminal cases because the burden of proof can never be shifted to the defendant. Regardless of how it is denominated, the evidence of blood alcohol content can do no more than give rise to a permissible inference, one which permits but does not require the trier of fact to find in accordance with the presumed fact. (See, People v Mertz, 68 NY2d 136, 148.) The leading case in understanding the use and application of inferences in criminal proceedings is Ulster County Ct. v Allen (442 US 140). The presumption there came from a New York statute which provided that the presence of a firearm in an automobile is presumptive evidence of its illegal possession by all persons occupying that vehicle. The court held that such evidence created only a permissible inference and not a mandatory presumption. The validity of such an inference must be decided on the facts of the specific case, and the statute creating the presumption *355 cannot be rejected on its face. In upholding the statute as applied to those defendants the court held that a permissible inference was valid as long as, under the facts of the case, there is a rational connection between the basic fact and the presumed fact. The court explained: "The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder’s freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device’s constitutional validity in a given case remains constant: the device must not undermine the factfinder’s responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.” "Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt’ standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.” (Ulster County Ct. v Allen, supra, at 156, 157).
New York courts have held: "The usual standard in determining whether the presumption is valid is that there must be a rational relation between the basic fact which is proved and the ultimate fact which is to be inferred. This rational relation requires that the ultimate fact be more likely than not to flow from the proved basic fact”. (People v Neiss, 73 AD2d 938, 940-941.)
Apparently, the Legislature in its wisdom has determined that there is scientific evidence that a certain blood alcohol level affects the ability to drive a vehicle often enough that a reasonable person can infer the one fact from the other, and that this is more likely than not. Therefore, a jury may be instructed that it is permissible to draw the inference.
However, if the prima facie evidence is the sole evidence of guilt, a stricter standard applies. In such case the basic fact must be sufficient for a rational jury to find the presumed fact beyond a reasonable doubt. As the court explained in Ulster County (supra, at 167): "[S]ince the prosecution bears the burden of establishing guilt, it may not rest its case entirely *356 on a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt. But in the former [permissive inference] situation, the prosecution may rely on all of the evidence in the record to meet the reasonable-doubt standard * * * As long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need only satisfy the [rational relation] test described in Leary. ”
New York has recognized this reasonable doubt standard. (See, People v Neiss, 73 AD2d 938, supra; People v Thomas, 107 Misc 2d 325.)
Thus, in a criminal prosecution where the basic fact, i.e., the one giving rise to the inference, is the only evidence presented, and the People rely exclusively upon the inference, the case should not survive a motion to dismiss unless the inference is so strong as to appear to be true beyond a reasonable doubt. Here, however, the People have presented other evidence besides defendant’s blood alcohol content. Because there is a rational relation between a blood alcohol content of .09% and impairment of ability from alcohol, the inference can be considered as part of the People’s proof. The People have established at least a prima facie case which properly must go to the finder of fact for a determination of defendant’s guilt.
What then is the result if the fact finder rejects as ambiguous at best the other evidence presented by the People, and is left with only the test result? Since it is prima facie evidence of guilt, can he draw the inference? The issue as to the effect of the presumption in criminal cases frequently arises with the jury instructions. (See, People v Guilford, 20 AD2d 192.) The particular presumption we deal with here applies only to a traffic violation, where there is no jury. Although driving while impaired is a lesser included offense of driving while intoxicated, for which the defendant is entitled to a jury, it is extremely unlikely that there will be a driving while intoxicated charge with such a test result. Thus, the trier of the fact in this kind of case almost always will be the court.
As trier of the fact, this court rejects the observations of the police officer as evidence that the defendant’s driving had been affected by his consumption of alcohol, for the reasons stated above. The court is left only with the results of the blood alcohol test. In that regard People v Cruz (48 NY2d 419) is instructive: "That is not to say, of course, that every person *357 who drinks before driving violates the law. On the contrary the Legislature recognized that the average person can consume a certain amount of alcohol without impairing his ability to operate a motor vehicle as he should. Otherwise the Legislature would not have provided that proof of .05% of 1% or less of blood alcohol content is prima facie evidence that the driver was not impaired or intoxicated * * * Of course some persons may find their driving faculties impaired by the least consumption of alcohol and, therefore, would be guilty of driving while impaired while others would not * * * Thus the impairment statute, by simply providing prima facie standards, takes into account the subjective tolerance of individuals in determining the ability to drive possessed by a defendant at the time of arrest.” (People v Cruz, supra, at 426.)
Of course, the court cannot know the effect of .09% of alcohol in the blood of this specific defendant, cannot know whether it affected this man’s ability to operate a motor vehicle. The inference cannot be drawn beyond a reasonable doubt, and the court is constitutionally unable to convict based solely on the presumption. Therefore, the statute providing for this presumption (Vehicle and Traffic Law § 1195 [2]) cannot be applied in the absence of other evidence of driving with impaired ability. Even if such a presumption were constitutionally permissible, this court, as trier of the fact, would decline to draw such inference. Defendant is not guilty.